ROBERT W. FERGUSON
Eric Newman, WSBA No. 31521
Assistant Attorney General
Office of the Attorney General of Washington
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 442-4498

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JOSEPH STIGAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DOUGH DOUGH, INC. et al.,<br><br>Defendants. | NO. 2:18-cv-00244-SAB<br>NO. 2:18-cv-00246-SAB<br>NO. 2:18-cv-00247-SAB |
| MYRRIAH RICHMOND and RAYMOND ROGERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BERGEY PULLMAN INC. et al.,<br><br>Defendants. | AMICUS CURIAE BRIEF BY THE ATTORNEY GENERAL OF WASHINGTON |

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| | |
|---|---|
| 1  ASHLIE HARRIS, individually and on behalf of all others similarly situated, | |
| 2 | |
| 3                                    Plaintiff, | |
| 4                v. | |
| 5  CJ STAR, LLC, et al., | |
| 6                                    Defendants. | |

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF CONTENTS**

I. INTRODUCTION AND STATEMENT OF INTEREST .................. 1

II. ARGUMENT ........................................................................... 1

    A. State Antitrust Laws Are Not Mere Mirror Images Of The Federal Antitrust Laws ................................................................. 1

    B. Franchise Agreements Have Both Vertical And Horizontal Components ................................................................. 6

    C. Whether A No-Poach Provision Is Reasonably Necessary To A Larger Procompetitive Activity Is A Question Of Fact ................ 7

III. CONCLUSION ....................................................................... 10

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

i

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Am. Motor Inns. v. Holiday Inns*,
 521 F.2d 1230 (3d Cir. 1975)..................................................................7

*Am. Needle, Inc. v. Nat'l Football League*,
 560 U.S. 183 (2010)..............................................................................8

*Blewett v. Abbott Labs.*,
 86 Wash. App. 782, 938 P.2d 842 (1997)............................................4

*Broadcast Music Inv. v. CBS*,
 441 U.S. 1 (1979)..................................................................................7

*California v. Arc America Corp.*,
 490 U.S. 93 (1989)............................................................................1, 2

*Freeman v. San Diego Ass'n of Realtors*,
 322 F.3d 1133 (9th Cir. 2003)..............................................................7

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
 551 U.S. 877 (2007)..............................................................................6

*Mandeville Island Farms*, Inc. v. *Am. Crystal Sugar Co.*,
 334 U.S. 219 (1948)..............................................................................6

*NCAA v. Board of Regents*,
 468 U.S. 85 (1984)................................................................................7

*Panag v. Farmers Ins. Co.*,
 166 Wash. 2d 27, 204 P.3d 885 (2009)................................................4

*Regents of the Univ. of Cal. v. ABC*,
 747 F.2d 511 (9th Cir. 1984)................................................................7

*State v. LG Elecs., Inc.*,
 186 Wash. 2d 1 (2016).....................................................................4, 5

*State v. Reader's Digst Ass'n, Inc.*,
 81 Wash. 2d 259, 501 P.2d 290 (1972)................................................4

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

ii

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Statutes

15 U.S.C. § 1 .................................................................................................. 6

15 U.S.C. § 15c .............................................................................................. 5

RCW 19.86.030 ............................................................................................. 1

RCW 19.86.080 ............................................................................................. 5

RCW 19.86.920 ............................................................................................. 4

Other Authorities

Alan Krueger & Orley Ashenfelter,
 *Theory and Evidence on Employer Collusion in the Franchise Sector* at 27-28
 (July 2018) ................................................................................................ 9

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

iii

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I.  INTRODUCTION AND STATEMENT OF INTEREST

The Attorney General of Washington (State) respectfully submits this amicus brief to aid the Court's assessment of the state antitrust law claims, RCW 19.86.030, in this matter. As the primary enforcer of the Washington State Consumer Protection Act (CPA)—which contains the State's antitrust laws—the Attorney General has a pronounced interest in the correct interpretation and development of the CPA. Particularly so in this matter; as noted in the State's leave to file, in the past year, the State has investigated over 100 nationwide franchisors that have included no-poach provisions in their franchise agreements, and has successfully resolved virtually all of those matters. In addition, the State has filed an enforcement action in state court against a national franchisor, and successfully defeated a motion to dismiss.

To be clear, the State is not taking a position on the merits of these suits. Rather, the State seeks to provide the Court with relevant legal principles and cases that may inform the Court's analysis of the extent to which Washington State's antitrust laws can and do differ from their federal counterparts.

## II.  ARGUMENT

**A.  State Antitrust Laws Are Not Mere Mirror Images Of The Federal Antitrust Laws**

It is well settled that state antitrust laws can and do follow different paths than their federal counterparts. This principle was firmly enshrined by the U.S. Supreme Court in *California v. Arc America Corp.*, 490 U.S. 93 (1989). In *Arc*

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

1

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

*America*, four states sought to recover treble damages as a result of a nationwide conspiracy to fix the prices of cement. The district court denied the states' claims on a settlement fund in the matter because the federal antitrust laws do not permit recovery of monetary damages for indirect purchasers—*i.e.*, entities that did not directly purchase the product at issue from the price-fixing defendants, and who instead acquired it through a third-party, such as a reseller.[1] The four states—all indirect purchasers of the price-fixed cement—argued that they were entitled to monetary relief under their respective state antitrust laws, which did permit indirect purchasers to recover damages. Both the district court and the Ninth Circuit held that the states were not entitled to any recovery, reasoning that "[s]uch statutes are clear attempts to frustrate the purposes and objective of Congress," that the state antitrust laws at issue conflicted directly with federal law as construed in *Illinois Brick*, and were pre-empted by federal law. *Arc America*, 490 U.S. at 99.

---

[1] Section 4 of the Clayton Act provides that "any person … injured in his business or property by reason of [an antitrust violation] may sue . . . in any district court in the United States." 15 U.S.C. § 15. In *Illinois Brick Co. v. Illinois*, the U.S. Supreme Court held that only direct purchasers of a price-fixed product were "injured in [their] business or property" within the meaning of Section 4. 431 U.S. 720, 729 (1977).

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

2

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

The Supreme Court disagreed and reversed. The Court acknowledged the "long history of state common-law and statutory remedies against monopolies and unfair business practices" and that "plain[ly], this is an area traditionally regulated by the States." *Id*. at 101. The Court concluded that that while congressional policies rightly inform the contours of relief under the federal antitrust laws, it is inappropriate to view those policies as "defining what federal laws allows States to do under their own antitrust law." *Id*. at 103. The Court also dismissed concerns that permitting indirect purchaser recovery under state antitrust laws could impose multiple liability on defendants, noting that "state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law." *Id*. (citation omitted).[2]

As *Arc America* demonstrates, state antitrust laws are not beholden to their federal counterparts. Consistent with that principle, the CPA and the cases

---

[2] One area in which state antitrust laws and federal antitrust laws have diverged is the treatment of resale price maintenance—the practice by which manufacturers and resellers agree to set a price floor for the manufacturer's goods. While federal antitrust laws analyze these agreements under the rule of reason, *See Leegin Creative Leather Prods v. PSKS, Inc.*, 551 U.S. 877 (2007), several states continue to regard these agreements as *per se* illegal. *See, e.g., People v. Dermaquest, Inc.*, Case No. RG 10497526 (Cal. Super. Ct. Alameda County Feb. 23, 2010) (permanent injunction on minimum RPM agreements).

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

3

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

interpreting it overwhelmingly demonstrate that federal judicial interpretations are guiding, but not binding, on state courts determining what conduct violates the CPA. RCW 19.86.920 ("[I]n construing this act, the courts be guided by final decisions on the federal courts . . . interpreting the various federal statutes dealing with the same or similar matters . . . ."). The Washington State Supreme Court has reaffirmed this relationship, noting time and again that "RCW 19.86.920 does not adopt any federal judicial precedents . . . [and] [i]n the final analysis, the interpretation of [the CPA] is left to the state courts." *State v. Reader's Digst Ass'n, Inc.*, 81 Wash. 2d 259, 275, 501 P.2d 290, 301 (1972); *see also Panag v. Farmers Ins. Co.*, 166 Wash. 2d 27, 47, 204 P.3d 885, 894 (2009). As one court put it, "[t]he directive to be guided by federal law does not mean that we are bound to follow it." *Blewett v. Abbott Labs.*, 86 Wash. App. 782, 787, 938 P.2d 842 (1997).

Thus, while Washington's antitrust laws do track their federal counterparts in a variety of respects, Washington courts have departed from federal law "for [] reason[s] rooted in our own statutes or case law . . . ." *Blewett*, 86 Wash. App. at 788; *see also State v. LG Elecs., Inc.*, 186 Wash. 2d 1, 10-11 (2016) ("[W]e have declined to follow federal law where the language and structure of the CPA departs from otherwise analogous federal provisions."). For example, the Attorney General is authorized to bring antitrust actions on behalf of indirect purchasers to recover restitution on their behalf.

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

4

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

RCW 19.86.080; *id*. at 790 (bar on indirect purchaser recovery by private parties does not apply to the Attorney General). In addition, in contrast to the federal *parens patriae* statute, there is no statute of limitations on the State's authority to bring *parens* actions under RCW 19.86.080 to recovery monetary relief. *LG Elecs., Inc.*, 186 Wash. 2d at 17; *compare* 15 U.S.C. § 15c (4-year limitations period) *with* RCW 19.86.080 (no limitations period provided).

Here, a state court has already rendered a decision relevant to the present matter. As the State noted in its Motion for Leave, it is currently in litigation with Jersey Mike's Franchise Systems, Inc. (Jersey Mike's) in King County Superior Court regarding its use of no-poach provisions. Jersey Mike's filed a motion to dismiss the State's lawsuit where it argued, among other things, that its franchise agreements "are undeniably vertical agreements that are subject to the rule of reason analysis." *State of Washington v. Jersey Mike's Franchise Systems, Inc., et al*., No. 18-2-25822-7-SEA, Mot. to Dismiss (King Cty. Sup. Ct. Nov. 11, 2018). On January 28, 2019, shortly after it held a hearing, the court denied Jersey Mike's motion to dismiss, preserving in full both the State's *per se* and quick look claims under the CPA. *Id*., Order Den. Def.'s Mot. to Dismiss (Jan. 25, 2019). In short, a state court judge has already ruled that these claims can be subject to *per se* liability under the CPA.

While there is certainly no dispute that federal case law is persuasive, perhaps often highly so, the Washington State Legislature had expressed its

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

5

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

preference that courts interpreting the CPA should be free to depart from federal antitrust law in appropriate circumstances. That circumstance is met here to the extent that federal law supports an argument that no-poach agreements in franchise agreements should be analyzed under the rule of reason, though the state of Washington disagrees that it does.

### B. Franchise Agreements Have Both Vertical And Horizontal Components

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. Restraints that are deemed unlawful *per se* include agreements among horizontal competitors to fix prices or to divide markets. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007). Sellers, like buyers, can be liable for horizontal agreements in restraint of trade. *Mandeville Island Farms*, Inc. v. *Am. Crystal Sugar Co.*, 334 U.S. 219, 235 (1948) (finding antitrust liability "even though the price-fixing was by purchasers, and the persons specially injured . . . are sellers, not customers or consumers") (footnotes omitted). In contrast, agreements that are deemed purely vertical are governed by the far more deferential rule of reason.

It would be a mistake to view a franchise agreement as vertical in all instances. In addition to their network of franchise locations, franchisors commonly own and operate their own corporate-owned stores in locations throughout the country. Accordingly, to the extent a franchise agreement

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

6

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

restricts solicitation and hiring among franchisees and a corporate-owned store—which is indisputably a horizontal competitor of a franchisee for labor—the agreement must properly be analyzed as a *per se* restraint. *See, e.g., Am. Motor Inns. v. ¶*, 521 F.2d 1230, 1253-54 (3d Cir. 1975) (holding that "otherwise unreasonable restraints of trade are not insulated from the antitrust laws by the fact that such company functions as a franchisor as well as" operating motels on the same horizontal market level as its franchisees).

C. **Whether A No-Poach Provision Is Reasonably Necessary To A Larger Procompetitive Activity Is A Question Of Fact**

Even in matters involving a restraint that is otherwise subject to *per se* scrutiny, the Supreme Court has carved out exceptions to summary condemnation, which merit discussion here only to dismiss their applicability. In *NCAA v. Board of Regents*, 468 U.S. 85 (1984) and *Broadcast Music Inv. v. CBS*, 441 U.S. 1 (1979), the Supreme Court applied the rule of reason to conduct that resembled price fixing. The Court justified applying the rule of reason in these context because (1) the blanket licenses at issue in *BMI* were novel, and (2) horizontal restraints on competition may be essential if a product is to be available at all. Over time, case law is now generally settled that even in an instance where a restraint might otherwise be viewed as *per se* illegal, it may nevertheless be "reasonably ancillary to the legitimate cooperative aspects of [a] venture" such that summary condemnation under the *per se* rule is inappropriate. *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1151

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

7

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  (9th Cir. 2003) (citing *Regents of the Univ. of Cal. v. ABC*, 747 F.2d 511, 517

2  (9th Cir. 1984). Specifically, "when restraints on competition are essential if the

3  product is to be available at all,' *per se* rules of illegality are inapplicable, and

4  instead the restraint must be judged according to the flexible Rule of Reason."

5  *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 203 (2010). That is

6  not the case here.

7        As mentioned, for over a year, the state of Washington has investigated

8  the use of no-poach provisions in franchise agreements. All told, the State has

9  issued investigative process to over 100 targets both within and without the

10  fast-food industry. To date, more than 50 franchisors have entered into an

11  Assurance of Discontinuance (AOD), a binding agreement in which they have

12  promised to (1) stop enforcing no poach provisions in their franchise

13  agreements; (2) stop including no-poach provisions in any new franchise

14  agreements after the AOD's date of entry; and (3) amend franchise agreements

15  with entities in Washington immediately, and as they come up for renewal

16  nationwide, to remove no poach language. *See* Decl. of Assistant Attorney

17  General Rahul Rao ¶ 2 (18-cv-244 ECF No. 29-1 at 2; 18-cv-246 ECF No. 38-1

18  at 2; 18-cv-247 ECF No. 32-1 at 2). Through this process, the State has gained a

19  unique perspective on the use and purported justification of these no-poach

20  provisions and offers the following observations, from this vantage point.

21

22

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

8

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Franchise agreements among different systems contain many common or uniform provisions (*e.g.*, use of trademarks, licensing, etc.). No-poach provisions are not among them. *See* Alan Krueger & Orley Ashenfelter, *Theory and Evidence on Employer Collusion in the Franchise Sector* at 27-28 (July 2018)[3] Indeed, nearly 1/3 of the franchisors the State issued process to did not include and have never included any form of a no-poach provision in their franchise agreements. In addition, in an almost every instance the State investigated, there was paucity of evidence on the extent to which franchisors have enforced no-poach provisions, raising significant question as to their utility and importance to the franchisor's system. Notably, as a result of the State's ongoing investigation, many franchisors began voluntarily ceasing enforcement of no-poach provisions and affirmatively removing them from future contracts.

For these reasons, franchisors should have a heavy burden to show that a no-poach provision in a franchise agreement can be justified as a restraint that is "reasonably necessary" to a separate, legitimate business transaction or collaboration. *See* DOJ Statement of Interest at 3, 8 and 16 (18-cv-244 ECF No. 30; 18-cv-246 ECF No. 39; 18-cv-247 ECF No. 34).

---

[3] *Available at* http://ftp.iza.org/dp11672.pdf (last visited Mar. 8, 2019).

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

9

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### III. CONCLUSION

As the foregoing demonstrates, state antitrust laws are not mere mirror images of their federal counterparts; they can and do depart in certain instances, and a Washington state court has done precisely that in a matter substantially related to the present litigation.

RESPECTFULLY SUBMITTED this 11th day of March 2019.

ROBERT W. FERGUSON
Attorney General


/s/ Eric Newman
ERIC NEWMAN, WSBA No. 31521
Assistant Attorney General
Office of the Attorney General of Washington
Antitrust Division

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

10

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# CERTIFICATE OF SERVICE

I hereby certify that on March 1st, 2019, I caused to be delivered via the method listed below the document to which this Certificate of Service is attached (plus any exhibits and/or attachments) to the following:

| NAME & ADDRESS | Method of Delivery |
|---|---|
| Adam J Bernstein<br>Paul Weiss Rifkind Wharton & Garrison LLP - NY<br>1285 Avenue of the Americas New York, NY 10019-6064<br>212-373-3397<br>Fax: 212-757-3990<br>abernstein@paulweiss.com | ☒ CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| Angelo J Calfo<br>Calfo Eakes & Ostrovsky PLLC<br>1301 Second Avenue Ste 2800<br>Seattle, WA 98101<br>206-294-7440<br>Fax: 206-407-2224<br>angeloc@calfoeakes.com | ☒ CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| Daniel J Howley<br>Paul Weiss Rifkind Wharton & Garrison LLP - DC<br>2001 K Street, NW<br>Washington, DC 20006-1047<br>202-223-7372<br>dhowley@paulweiss.com | ☒ CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

11

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | Craig J Ackermann<br>Ackermann & Tilajef PC<br>1180 South Beverly Drive Suite 610<br>Los Angeles, CA 90035<br>310-277-0614<br>Fax: 310-277-0635<br>cja@ackermanntilajef.com | ☒CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| 5<br>6<br>7<br>8 | Brian Denlinger<br>Ackermann & Tilajef PC<br>Attorney at Law<br>2602 N Proctor Street Suite 205<br>Tacoma, WA 98406<br>253-507-4619<br>bd@ackermanntilajef.com | ☒CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| 9<br>10<br>11<br>12 | David W Kesselman<br>Kesselman Brantly Stockinger LLP<br>1230 Rosecrans Ave Ste 690,<br>Manhattan Beach, CA 90266<br>310-307-4555<br>dkesselman@kbslaw.com | ☒CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| 13<br>14<br>15 | India Lin Bodien<br>Attorney at Law<br>2522 N Proctor St #387<br>Tacoma, WA 98407<br>253-212-7913<br>india@indialinbodienlaw.com | ☒CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other |
| 16<br>17<br>18<br>19<br>20<br>21<br>22 | Mary Helen Wimberly<br>Kristen Ceara Limarzi<br>US Department of Justice<br>Antitrust Division - DC<br>950 Pennsylvania Avenue Room 3224<br>Washington, DC 20530<br>202-514-4510<br>maryhelen.wimberly@usdoj.gov<br>202-353-8629<br>Kristen.limarzi@usdoj.gov<br>202-353-8629 | ☒CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐Other: |

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

12

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | Rudolf J Verschoor<br>United States Attorney's Office<br>920 W Riverside Avenue Room 340<br>Spokane, WA 99201<br>509-353-2767<br>usawae.rverschoorecf@usdoj.gov | ☒ CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| 5<br>6<br>7<br>8<br>9<br>10 | Michael James Hines<br>Kelly E Konkright<br>Rein Johnson<br>Lukins & Annis PS - SPO<br>717 W Sprague Avenue Suite 1600<br>Spokane, WA 99201-0466<br>509-455-9555<br>Fax: 15093632490<br>mhines@lukins.com<br>kkonkright@lukins.com<br>rjohnson@lukins.com | ☒ CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |
| 11<br>12<br>13<br>14<br>15 | Robert A Atkins<br>Paul Weiss Rifkind Wharton & Garrison LLP – NY<br>1285 Avenue of the Americas New York, NY 10019-6064<br>212-373-3000<br>Fax: 212-757-3990<br>ratkins@paulweiss.com | ☒ CM/ECF System<br>☐ Electronic Mail<br>☐ U.S. Mail<br>☐ Other: |

s/ *Eric Newman*
ERIC NEWMAN, WSBA No. 31521
Assistant Attorney General

AMICUS CURIAE BRIEF BY THE
ATTORNEY GENERAL OF WASHINGTON
NO. 2:18-CV-00244, 246, 247-SAB

13

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744